# Heyse v. The Philadelphia Electric Company, Appellant.

*Negligence—Safe place to work — Electricity—Permit — Mistaken assurance of safety—Proximate cause—Case for jury.*

In an action against an electric company to recover damages for personal injuries it appeared that the plaintiff, a carpenter who had no knowledge of electrical appliances, was employed by a contractor engaged in making repairs in the switch room of the defendant company's electrical plant and was injured by coming in contact with a live switch. The plaintiff had commenced to work in such room after notice by the defendant's operating department and after the issuance by the latter of a permit, upon which all parties had the right to rely, and the work being uncompleted the first day, had returned the succeeding day, when the accident happened. It appeared that under the defendant company's rules a new permit was necessary for each day's work, and that the permit previously issued had been returned by the foreman of the defendant company's construction department at the end of the first day's work, of which facts plaintiff had no knowledge. An employee of the defendant upon the ground who turned the electric current on and off in the compartment in which plaintiff was working at the time of the accident gave additional assurance of safety, but in the course of the work the plaintiff came in contact with a switch to which the defendant had permitted current to flow and was injured. *Held*, that the question of defendant's negligence was properly left to the jury.

Argued Jan. 7, 1915. Appeal, No. 209, Jan. T., 1914, by defendant, from judgment of C. P. No. 2, Philadel-

phia Co., Sept. T., 1913, No. 282, on verdict for plain-
tiff in case of Theodore Heyse v. The Philadelphia Elec-
tric Company. Before BROWN, C. J., POTTER, ELKIN,
STEWART, MOSCHZISKER and FRAZER, JJ.  Affirmed.

Trespass to recover damages for personal injuries.
Before STAPLES, P. J., specially presiding.

. From the record it appeared that plaintiff, a carpen-
ter, was in the employ of Raff, a builder who, under di-
rections of defendant's construction department was do-
ing carpentry and concrete work at defendant's electric
power house. Defendant's foreman, McDonald, and as-
sistant foreman, Stout, were instructing plaintiff's fore-
man how to proceed with the enlarging of a switch com-
partment. The work required the carpenters to come in
close proximity to the switches. Defendant's foreman
notified the operating department which controlled the
current to shut off the current from the switch com-
partment. The current was shut off and the operating
department notified the construction department that it
was safe to proceed with the work and issued a permit
for work in the switch compartment. The permit stated
"immediately upon the completion of the work notify
the  system  operator  by  returning  permit  properly
signed." Though the work was not completed on Fri-
day, the construction foreman returned the permit that
evening. On Saturday, plaintiff, under the direction of
his employer's foreman, and with defendant's permis-
sion, went to work in the switch compartment. He was
told by Smith, a crane operator in defendant's employ,
who had been working around the switches, to knock
off, with his hammer, a knob which interfered with the
proper fitting of a slab which was to be installed. The
knob was charged with electricity and in complying
with Smith's suggestions plaintiff was severely injured.

Immediately after the accident, while Heyse was still
lying on the floor in front of the switch compartment,
Smith was asked by MacDonald whether he had said

anything about the condition of the switches where the accident happened, and Smith then again stated that it was safe to work on.  It further appeared that the foreman of defendant's construction department knew when the current was turned on again that the work in question had not been finished on Friday when the carpenters stopped work for the day.

The evidence as to what Smith did and said was offered without objection by the defendant until after the plaintiff rested, at which time defendant's counsel moved to strike out from plaintiff's testimony all testimony of witnesses as to what was said by Smith on various occasions, and this motion was denied by the trial judge upon the ground that it was a question for the jury as to whether Smith had any authority or not, and the jury was so charged.

Other facts appear in the opinion of the Supreme Court.

Verdict for plaintiff for $7,500 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, instructions to the jury and refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*R. Stuart Smith,* with him *Charles E. Morgan,* for appellant.

*Archibald T. Johnson,* for appellee.

OPINION BY MR. JUSTICE ELKIN, February 8, 1915:

The main contention of appellant is that under the evidence as developed at the trial a verdict should have been directed for defendant, because the injury sustained by the plaintiff was the direct result of a mistaken assurance of safety given him by an employee of the defendant, who was acting beyond the scope of his em-

ployment. This position, if sustained, would make the
right to recover damages in the present case depend upon
a very narrow point. But even if the case should be so
considered, two questions necessarily arise: First,
whether the injury was the direct result of a mistaken
assurance of safety; and, second, whether the employee
who gave that assurance acted beyond the scope of his
employment? These are questions of fact, ordinarily
for the jury, and in the present case the trial was con-
ducted along these lines. It is true, as able counsel for
appellant very earnestly contended, that the trial judge
in charging the jury put the question of negligence upon
other grounds, and referred to the testimony relating to
Smith, the employee who gave the assurance of safety,
on Saturday morning, as but incidental to the main in-
quiry. We cannot agree that the rights of the defendant
were prejudiced by anything said by the trial judge, for
as we view the record it would not have been proper to
limit that inquiry to the single question whether Smith
acted within the scope of his employment. It was the
duty of defendant to furnish plaintiff a reasonably safe
place to work, and this duty became all the more im-
perative because of the very dangerous currents of
electricity in the compartment where the work had to
be done. It is conceded by both sides that the compart-
ment in which repairs were being made was not a safe
place to work when the electric currents were turned on.
This fact was so well known to the defendant company
that no one was allowed to work there until a proper per-
mit was given. Heyse was a carpenter without knowl-
edge of electrical appliances, and did not know except
as notified by others what dangers surrounded him.
He relied primarily upon the instructions given him by
his foreman, who was an employee of Raff, the con-
tractor, and not of the defendant company, and his fore-
man, McClean, received verbal instructions from Phil-
pot, the superintendent of Raff. After McClean was
notified by Philpot that the electric current had been

turned off and the place was safe, he so instructed Heyse and the other workmen who were making the repairs. Philpot before notifying McClean received a permit from Stout who was the assistant foreman of the construction department of the defendant company. This permit was issued by appellant through an employee who had the authority so to do. Up to this point everything had proceeded in the regular way and there is no question about the authority to act or the scope of employment of anyone. This permit was issued on Friday morning before Heyse and the other workmen proceeded with their repair work. McClean, the foreman in charge of the repair work, received verbal notice that the permit was issued, that the place was safe, and he in turn so notified the men who were making the repairs. At this juncture the testimony relating to Smith is in point. He was a crane runner, but at the time of the accident the crane was not in operation, and he either had or assumed to have authority over the switches through which the electric current passed into the compartments. McClean testified that Smith had authority over these switches and no one denied this statement. Before proceeding with the work, in addition to the permit issued by Stout to Philpot, the superintendent of Raff, of which McClean had been notified, Smith who apparently was in charge of the local switches added his assurance that the current was turned off and the place safe. We must therefore regard what Smith said simply as an additional assurance of safety. If the accident had occurred on Friday no one could have seriously questioned the right of the plaintiff to recover damages for the injuries sustained. The accident did not occur until Saturday morning and this makes it necessary to consider another point in the case. The repair work had not been completed on Friday evening when the workmen quit for the day. They returned to their work the next morning and were told by Smith that the current was turned off and the place was safe. With this assurance they

began their work and in a few moments the plaintiff was injured while in the performance of the duties of his employment. Appellant contends that the foreman of Raff should have obtained another permit from Stout before beginning work on Saturday. The company had a rule requiring permits to be returned each day, but there is not the slightest evidence in this case that Philpot, the superintendent of Raff, or McClean, the foreman, or the plaintiff, had any knowledge of such a rule. The permit itself, which was brought upon the record by defendant, provides among other things as follows:

"Immediately upon completion of the work notify the system operator by returning permit properly signed." The work was not completed on Friday evening although the permit may have been signed by Philpot and returned, but there is no evidence that any one connected with the repair work had notice that the conditions were changed between the time of quitting work Friday evening and of commencing work Saturday morning. It must have been obvious to any employee of the defendant who observed the repair work that it had not been completed on Friday evening. Smith who apparently was in closer touch with the work than any other person representing the defendant knew that the work had not been completed and he was there on Saturday morning when plaintiff with others returned to finish the repair work. He had charge of the local switches which turned the currents of electricity on and off, at least this was the testimony, and when he gave the assurance that the place was safe, it was but reasonable to infer that he was acting under the direction of the operating department, or at least was there in some capacity as the representative of the defendant company in connection with this particular work. Under all the circumstances we think the case was for the jury and that the trial judge committed no error harmful to the defendant in the manner in which it was submitted. Certainly a case was made out which required an answer by defendant if there was any

defense upon the merits. We cannot agree that the testimony relating to Smith should have been stricken out by the trial judge as requested. Indeed according to our view the plaintiff has more right to complain about the effect which this testimony was allowed to have than the defendant.

Assignments of error overruled and judgment affirmed.